Joseph M. Conroy, J.
This is a third-party action commenced by Singerman Bus Corporation and William J. Hommel (hereinafter referred to as Singerman and Hommel, respectively) against American Fidelity Fire Insurance Company (hereinafter referred to as Fidelity) to recover whatever sum they might he held liable for in the main action. This action is tried on submitted facts pursuant to 3222 CPLB.
*5 The main action (a consolidation of five negligence actions) arose out of an accident involving a bus operated by Hommel on behalf of Singerman which had borrowed the bus from American Orchestra Company and Charter Coach Company (hereinafter referred to as American and Charter, respectively). The main action was settled. .¿Etna Casualty & Insurance Company, insurer of Singerman, and Fidelity, insurer of American and Charter, each paid one half of the settlement.
The issue before this court is whether .¿Etna and Fidelity are liable to Singerman and Hommel as coinsurers or whether Fidelity is liable primarily.
The pertinent facts are these: Two buses, Nos. 4101 and 4102, were owned by American. On April 16, 1960, Singerman contracted with Charter to purchase bus No. 4102. (The actual association between Charter and American does not appear, but it is clear that the acts done by Charter regarding the property of American were lawful.) A deposit was made by Singerman and the remainder of the purchase price was to be paid on delivery, which was set for May 23, 1960. Charter was to make alterations in the seating capacity of the bus prior to delivery.
The bus was not delivered on May 23, 1960 because it was then being used by Charter and because the alterations had not been completed. The delivery date was changed by agreement to June 16, 1960.
Subsequent to the making of the contract of purchase, Singer-man requested Charter to provide it with a bus for its use pending delivery of bus No. 4102. Charter lent American’s bus No. 4101 to Singerman without charge and this bus was used exclusively in Singerman’s business for about one and a half months. Neither American nor Charter received any revenue for the bus during this period.
On May 30, 1960, bus No. 4101 was involved in the aforementioned accident. In defending the resulting negligence actions, Singerman and Hommel, in their third-party complaint, claimed that they were entitled’ to coverage under the Fidelity policy insuring American, as owner of the bus, on the ground that they were additional insureds.
Fidelity’s policy provides, in pertinent part:
“With respect to the insurance for bodily injury liability and for property damage liability the unqualified word ‘ insured ’ includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use *6 thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.” * * *
“ If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance.”
Fidelity, in its answer, admits that Singerman and Hommel were legally responsible for the bus and that it was used with the permission of American and Charter, the named insureds, but, in an affirmative defense, claims that it is only a coinsurer under the terms of its policy, because Singerman and Hommel are insured by ¿Etna against this liability.
This case, therefore, turns upon whether and to what extent the ¿Etna policy provides coverage.
¿Etna’s policy of insurance covers Singerman for liability caused in the use of (1) an “ owned automobile ” which is defined as “an automobile owned by the named insured ’ ’, and (2) a “ hired automobile ” which is defined as “an automobile used under contract in behalf of, or loaned, to, the named Insured”. (Emphasis supplied.) The ¿Etna policy also provides, however, that: “If the Insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under division 2 of the Definition of Hazards with respect to a hired automobile insured on a cost of hire basis * * * shall be excess insurance over any other valid and collectible insurance.” (Emphasis supplied.)
Singerman and Hommel argue that the bus is a “ hired automobile ’ ’ and, accordingly, the insurance provided by the ¿Etna policy is only excess insurance regarding this loss and therefore the ¿Etna policy is not other “ valid and collectible insurance ” within the meaning of the Fidelity “ other insurance ” clause.
Fidelity contends that pursuant to section 128 of the Vehicle and Traffic Law Singerman is deemed an owner of the bus and, accordingly, the bus is an “ owned automobile ’ ’ under the ¿Etna policy and is covered without any exceptions, and that, as a *7 statutory owner, Singerman, with American, is jointly and severally liable pursuant to subdivision 3 of section 388 of the Vehicle and Traffic Law.
Singerman was an owner within the meaning of section 128 of the Vehicle and Traffic Law since it was a “ bailee of a motor vehicle or motorcycle having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days.” (Cf. Tyrnauer v. Travelers Ins. Co., 15 A D 2d 293, 297.) It does not necessarily follow, however, that the bus was an “ owned automobile ” within the meaning of the AEtna policy. (See City of Albany v. Standard Acc. Ins. Co., 7 N Y 2d 422, 430; Phoenix Ins. Co. v. Guthiel, 2 N Y 2d 584, 589, 590; Mason v. Allstate Ins. Co., 12 A D 2d 138, 144.)
Section 388 of the Vehicle and Traffic Law provides that an owner (including one so defined under section 128 of that law) “ shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle * * * by any person using or operating the same with the permission, express or implied, of such owner.” Subdivision 4 of section 388 and subdivision 2 of section 167 of the Insurance Law require that all liability insurance cover the insured against liability incurred under section 388.
There is nothing in section 388 or section 167 of the Insurance Law to indicate that the policy must use the language or definitions of the Vehicle and Traffic Law. These sections merely provide that the policy must afford the stated coverage. So long as the policy provides that coverage, the definition of terms in the statute will not govern the meaning of words used in a contract of insurance. (Cf. City of Albany v. Standard Acc. Ins. Co., supra; Phoenix Ins. Co. v. Guthiel, supra; Mason v. Allstate Ins. Co., supra.)
The AEtna policy clearly provides the coverage required by section 388. Were there no other insurance on the loaned bus, Singerman’s policy would afford full coverage. Where, however, there is other insurance covering Singerman for liability under section 388 of the Vehicle and Traffic Law, the AEtna policy is, as stated therein, excess insurance. This is not in violation of the terms of the Insurance Law since Singerman is at all times covered for liability arising under section 388.
Further, section 388 is intended to make the owner of a vehicle liable to the injured party when the vehicle is used with the permission of the owner, whether or not it is used in his behalf. This section was not intended to change the owner’s common-law liability to any other extent. (See Mills v. Gabriel 259 App. Div. 60, affd. 284 N. Y. 755; Petro v. Eisen *8 berg, 207 Misc. 380.) There is no issue as to Singerman’s liability to the injured parties. Fidelity seeks to use section 388 to avoid the result of General Acc. Fire & Life Assur. Corp. v. Piazza (4 N Y 2d 659). This it may not do. In reality, the bus in this case was lent by Charter to Singerman. Since Fidelity is not a person for whom the protection of section 388 was intended, it may not be held that as to it Singerman is an ‘ owner ’ ’ within the meaning of that section and thus allow Fidelity to avoid, in substantial part, its obligation under its insurance contract.
Judgment is accordingly rendered in favor of the plaintiffs in the sum of $5,425. No costs are allowed in favor of either party.